1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MARIA SANDRA RIVERA,

10

Plaintiff-Petitioner,

11

v.

12

ERIC H. HOLDER, *et al.*,

13

Defendants-Repondents.

Case No. C14-1597RSL

ORDER GRANTING MOTION TO
CERTIFY CLASS AND
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

14
15
16
17
18

    This matter comes before the Court on plaintiff-petitioner's motion to certify a class, Dkt.

\# 2; defendants-respondents' motion to stay proceedings, Dkt. # 18; and the parties' cross-

motions for summary judgment, Dkt. # 25; Dkt. # 28-1.  Having reviewed the memoranda and

exhibits submitted by the parties, the Court finds as follows.

19

## I.  BACKGROUND

20
21
22
23
24
25
26
27

    Plaintiff-petitioner Maria Sandra Rivera ("plaintiff") is a native of Honduras who entered

the United States on May 29, 2014, and was subsequently held in immigration detention under

§ 236(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a).  Dkt. # 1 ¶ 44.  On

June 23, 2014, U.S. Immigration and Customs Enforcement ("ICE") set an initial bond for

plaintiff at $7,500.  Id. ¶ 48.  Plaintiff requested a custody redetermination hearing before an

Immigration Judge ("IJ"), and requested release on her own recognizance pursuant to the

government's authority under § 1226(a) to grant conditional parole.  Id. ¶ 49.  The IJ ruled that

28

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

he did not have jurisdiction under § 1226(a) to consider plaintiff's request for release on conditional parole.  Dkt. # 5 (Arno Decl.) ¶ 3.  Finding that plaintiff presented "somewhat" of a flight risk, the IJ reduced plaintiff's bond to $3,500.  Dkt. # 27-5 (IJ Mem.) at 4.  Unable to pay this bond, plaintiff remained in detention until October 28, 2014, when the IJ granted plaintiff's application for asylum.  Dkt. # 26 (Benki Decl.) ¶ 8.  At the time of her release after five months of detention, plaintiff's appeal to the Board of Immigration Appeals ("BIA") was still pending.  Dkt. # 36 (Pl. Reply MSJ) at 11.

On October 16, 2014, plaintiff filed this class action and moved for class certification, petitioning for the writ of habeas corpus and seeking declaratory and injunctive relief.  Dkt. # 1; Dkt. # 2.  Plaintiff claims that Immigration Judges in Seattle and Tacoma Immigration Courts uniformly deny all requests for "conditional parole" under 8 U.S.C. § 1226(a) on the ground that this statutory provision restricts IJs to permitting aliens' release on a minimum $1,500 bond.  Dkt. # 1 ¶ 65.  Plaintiff argues that this policy and practice violates the statute, id. ¶ 66, and requests that the Court declare this policy unlawful and order defendants-respondents ("defendants") to provide aliens with bond hearings where the IJ will consider requests for conditional parole.

On November 3, 2014, the parties stipulated that the case was appropriate for resolution under Fed. R. Civ. P. 56(a) because it "rais[ed] a purely legal issue" and no material facts were in dispute.  Dkt. # 17 at 2-3.  The parties agreed that if the Court decided "the sole legal issue raised by this lawsuit in favor of the Petitioners, class relief would be appropriate . . . as the legal issue in this case is determinative of whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole' under Federal Rule of Civil Procedure 23(b)(2)."  Id. at 2.

On December 15, 2014, defendants moved to stay this action on the grounds that the BIA might address the issue presented here in a separate case, In re Vicente-Garcia.  Dkt. # 18.  In that case, the alien similarly sought release on conditional parole, Dkt. # 18-2 (IJ Mem.); the IJ

certified the question of whether an IJ has the authority to grant such requests to the Board, and

the BIA subsequently requested supplemental briefing from the parties on the following issues:

> (1)   Whether the Immigration Judge is authorized to grant conditional parole and can release the alien without any monetary bond on his or her own recognizance during a custody redetermination hearing;
>
> (2)   Given that the alien in this case has posted the full bond and been released, should the Board adjudicate the merits of the bond appeal or dismiss the appeal as moot?  What impact, if any, do the procedures set forth in 8 C.F.R. §§ 1236.1(d)(1), (2), and (3), which relate to the District Director's authority to ameliorate the terms and conditions of release, have on this question?

Dkt. # 38-1 (BIA Letter).  Although this briefing has been submitted, Dkt. # 38-1; Dkt. # 38-2;

the BIA has not yet indicated whether it will decide the first issue or dismiss the appeal.  The

parties in the instant case have both moved for summary judgment.  Dkt. # 25; Dkt. # 28-1.[1]

## II.  LEGAL STANDARDS

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences

drawn therefrom in the light most favorable to the nonmoving party, the moving party shows

that "there are no genuine issues of material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir.

---

[1] Defendants argue that they should all be dismissed as improper parties with the exception of Lowell Clark, Warden of the Northwest Detention Center.  Defendants rely on Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004), which held that, as a default rule, habeas petitioners challenging their confinement may only proceed against the wardens of their detention facilities (the persons with immediate custody over them).  The Padilla Court notably declined to reach whether the Attorney General was a proper respondent to a habeas petition filed by an alien detained pending deportation.  Id. at 435 n. 8.  The Ninth Circuit has only once addressed how the "immediate custodian" rule applies to habeas petitioners in the immigration context, in an opinion that it withdrew with directions that it may not be cited as precedent.  Armentero v. INS, 340 F.3d 1058 (9th Cir. 2003), withdrawn, 382 F.3d 1153 (9th Cir. 2004). Unlike in Padilla, plaintiff here challenges a government policy that is based on a misapplication of the INA, seeking relief that her immediate custodian would be unable to provide.  The Court thus finds the immediate custodian rule inapplicable in this case, consistent with Olmos v. Holder, 2014 WL 222343, at *2 (D. Colo. Jan. 17, 2014) (rule inapplicable where petitioner sought bond hearing); see also Sanchez-Penunuri v. Longshore, 7 F. Supp. 3d 1136, 1141-51 (D. Colo. 2013).  The Court notes that the Attorney General, the Director of Homeland Security and an ICE Field Office Director were defendants/appellants in a recent case before the Ninth Circuit where a habeas petitioner challenged his bond hearing on the basis of the IJ's legal error.  Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).  All of the named defendants will remain in this action.

2011).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The summary judgment standards do not change when the parties file cross-motions: the court must apply the same standard and rule on each motion independently.  <u>We Are Am. v. Maricopa Cnty. Bd. of Sup'rs</u>, 297 F.R.D. 373, 380 (D. Ariz. 2013) (citations omitted).   The granting of one motion does not necessarily translate into the denial of the other unless the parties rely on the same legal theories and the same set of material facts.  <u>Id.</u> (citations omitted).

A district court generally has "broad discretion" to stay proceedings as incident to its power to control its own docket, <u>Clinton v. Jones</u>, 520 U.S. 681, 703 (1997) (citation omitted). A court may, "with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  <u>Leyva v. Certified Grocers of California Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1979).  A court considering whether a stay is appropriate must weigh the competing interests that will be affected by the requested stay, including: (1) the possible damage which may result from granting the stay; (2) the hardship or inequity which a party may suffer if the suit is allowed to go forward; and (3) the "orderly course of justice," measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979).  A party seeking to maintain a class action must prove that she has met all four requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Rule 23(b).  <u>Zinser v. Accufix</u> Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  Although the trial court exercises broad discretion in determining whether to certify a class, the Court must nonetheless conduct a "rigorous analysis" to determine whether the party seeking certification has satisfied all the necessary Rule 23 elements.  <u>Wal–Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2552

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1    (2011).  The Court may consider questions going to the merits "to the extent – but only to the

2    extent – that they are relevant to determining whether the Rule 23 prerequisites for class

3    certification are satisfied."  Amgen Inc. v. Conn. Retirement Plans and Trust Funds, 133 S.Ct.

4    1184, 1195 (2013).  Classes of aliens seeking habeas relief for their prolonged detentions have

5    been certified in this Circuit.  Rodriguez v. Hayes, 578 F.3d 1105 (9th Cir. 2009).

6                                    **III.  DISCUSSION**

7        **A.    Standing**

8            Defendants argue that plaintiff lacks standing because she has not asserted a cognizable

9    injury, traceable to defendants' conduct, that the requested remedy is likely to redress.  Dkt.

10   # 28-1 at 12.  Plaintiff asserts that she has suffered a "procedural injury," given that her IJ's

11   failure to consider her eligibility for conditional parole deprived her of the proper bond hearing

12   which she was entitled to under § 1226(a).  Dkt. # 33 (Pl. Resp. MSJ) at 6.

13           To establish Article III standing, a plaintiff must demonstrate that: (1) she suffered an

14   injury in fact that is concrete, particularized, and actual or imminent (not conjectural or

15   hypothetical); (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is

16   likely to be redressed by a favorable court decision.  Lujan v. Defenders of Wildlife, 504 U.S.

17   555, 560-61 (1992).  However, a litigant to whom Congress has accorded "a procedural right to

18   protect his concrete interests" may "assert that right without meeting all the normal standards for

19   traceability and redressibility."  Id. at 672 n. 7; Massachusetts v. EPA, 549 U.S. 497, 498 (2007).

20   Such a litigant need only demonstrate (a) that she has a procedural right that, if exercised,

21   "could" protect her concrete interests and (b) that those interests fall within the zone of interests

22   protected by the statute at issue.  Natural Res. Def. Council v. Jewell, 749 F.3d 776, 782-83 (9th

23   Cir. 2014) (citation omitted); see also Center for Food Safety v. Vilsack, 636 F.3d 1166, 1171

24   (9th Cir. 2011) (it must be "reasonably probable" that the challenged action will threaten

25   plaintiff's concrete interests).  Unlike parties who assert substantive injuries, litigants alleging

26   the deprivation of procedural rights do not have to prove that, had their rights been respected, the

27

28   ORDER GRANTING MOTION TO CERTIFY CLASS
     AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

substantive result would have been altered.  Wash. Envtl. Council v. Bellon, 741 F.3d 1075, 1078 (9th Cir. 2014) (citation omitted).  Nevertheless, the redressibility requirement "is not toothless in procedural injury cases," Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 545 1220, 1227 (9th Cir. 2008); and so it must be possible that exercising their rights could protect their concrete interests, see id.  The "procedural injury" framework has typically been applied in environmental cases.  E.g., id.

This Court has found no precedent directly holding that providing an alien with a bond hearing that does not comply with § 1226(a) constitutes the type of "procedural injury" discussed in Lujan and other cases.  The Court has considered Ninth Circuit precedent in the immigration context in evaluating plaintiff's claim, and this authority offers support for finding that plaintiff has alleged a redressable harm.  In Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 951 (9th Cir. 2008), the Ninth Circuit held that § 1226(a) required the Attorney General to provide individualized bond hearings to aliens faced with prolonged detention, noting that a statute permitting prolonged detention absent such a hearing would be "constitutionally doubtful."  In Singh v. Holder, 638 F.3d 1196, 1200 (9th Cir. 2011), the Ninth Circuit heard a petitioner's claim that his due process rights were violated during his bond hearing, finding that district courts had habeas jurisdiction to review Casas bond hearings for "constitutional claims and legal error."  The Singh court held that bond hearings had to employ certain procedural safeguards as a matter of due process to protect a detainee's "liberty interest" in "freedom from prolonged detention."  Id. at 1205-09.  The court also found that petitioner was entitled to a new bond hearing without expressly finding that a proper hearing would result in a different outcome. Id. at 1209.  If detainees may bring such challenges, it follows that an alien who is subjected to "prolonged detention" without receiving a bond hearing that complies with § 1226(a) has standing to challenge her defective hearing and demand a new one.

Defendants argue that finding that plaintiff has standing would require the Court to review (and assert the authority to reverse) the IJ's discretionary decision to impose a $3,500

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

bond, which the Court is barred from doing under § 1226(e).[2]  Dkt. # 35 (Def. reply MSJ) at 5.
The Court disagrees.  While an IJ's discretionary judgment in how it applies the statute is not
subject to review, this Court has found no authority supporting the notion that an IJ has the
discretion to misinterpret the statute under which he operates.  This would appear to conflict
with Singh.  See 638 F.3d at 1200-01 (district courts have habeas jurisdiction to review Casas
bond hearing determinations "for constitutional claims and legal error . . . . Although § 1226(e)
restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction
over constitutional claims or questions of law."); see also Prieto-Romero v. Clark, 534 F.3d
1053, 1067 (9th Cir. 2008) (finding that court had no authority to hear challenge that bond
amount was excessively high, but noting that extent of Attorney General's authority under the
INA was not a matter of discretion and therefore proper for judicial review).

Furthermore, plaintiff need not show that the IJ's decision necessarily would have been
different had he been aware of his authority to grant conditional parole.  Singh made no such
finding when it held that petitioner was entitled to a new bond hearing; instead, the court applied
a harmless error analysis, finding that he was entitled to a new hearing due to certain errors that
prejudiced him and "could well have" affected the hearing's outcome.  638 F.3d at 1205.  It is
possible that plaintiff's IJ would not have imposed a bond had he been aware that he could have
granted parole with non-monetary conditions more onerous than the bond amount he imposed,
consistent with the BIA's observation in In Re: Luis Navarro-Solajo, 2011 WL 1792597, at *1 n.
2 (BIA Apr. 13, 2011).  The question is whether § 1226(a) permits IJs to grant such parole.[3]

Defendants cite Navarro-Solajo to argue that the IJ would have imposed a bond (that

---

[2] The statute states, in relevant part:

> The Attorney General's discretionary judgment regarding the application of this section
> shall be not subject to review.  No court may set aside any action or decision by the
> Attorney General under this section regarding the detention or release of any alien or the
> grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

[3] The Court interprets the term "conditional parole" to refer to the release of an individual subject to
certain conditions.

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

plaintiff could not pay) regardless of whether conditional parole was available, as aliens who receive bonds greater than the minimum (on the grounds that they are flight risks) are ineligible for conditional parole.  Dkt. # 28-1 at 17.  This case makes no such assertion.  In Navarro-Solajo, the BIA reviewing a bond determination held that the IJ properly considered the relevant factors in imposing the statutory minimum bond of $1,500.  Id. at *1.  In a footnote, the BIA declined to reach respondent's argument that he should have been released on conditional parole:

> It is not necessary here to address the extent of an Immigration Judge's authority as to conditional parole.  A release on conditional parole as provided under section 236(a)(2)(B) of the Act could present more onerous conditions on a respondent than the minimum bond set by the Immigration Judge in this case.  Moreover, the respondent requested and was granted the minimum bond. The Immigration Judge's decision to impose a monetary bond was the proper disposition for this case.

Id. at *1 n. 2. While the BIA's order is not a model of clarity, the footnote suggests that Navarro-Solajo could not receive conditional parole because he requested the minimum bond before the IJ and because the bond amount was fair in that case.  The Court cannot interpret the case as holding that aliens who would require a bond amount greater than the minimum are per se ineligible for conditional parole.  Nor can the Court infer that the IJ in plaintiff's case would not have granted conditional parole in lieu of imposing any bond, especially where (according to the BIA) conditional parole could require conditions more onerous than (at least) the minimum bond.  Assuming that the IJ made a mistake of law when he concluded that he lacked authority to grant plaintiff conditional parole, the Court cannot conclude that this mistake was harmless just because it is possible he would have rendered the same decision had he not been misinformed.[4]

---

[4] Defendants argue that individuals found to be flight risks are legally ineligible for conditional parole, citing federal regulations interpreting the INA and cases interpreting these regulations.  Matter of Castillo-Padilla, 25 I. & N. Dec. 257, 261 (BIA 2010) ("Pursuant to 8 C.F.R. § 236.1(c)(8) (2010), an alien may be released from custody on conditional parole under section 236(a) of the Act only if "such release would not pose a danger to property or persons, and . . . the alien is likely to appear for any further proceeding.").  This argument is unconvincing.  The regulation in question authorizes officers "authorized to issue a warrant of arrest" to release aliens under the conditions set out in § 1226(a)(2) (authorizing release on bond or conditional parole) if the alien demonstrates he is likely to appear for

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

This leaves defendants' strongest standing argument: that plaintiff lacks standing because her detention only lasted a total of five months (four months at the time of filing), and therefore was not prolonged.  Dkt. # 35 at 3.  The <u>Casas</u> and <u>Singh</u> courts held that bond determinations (and their procedural protections) were required to prevent "prolonged detentions."  This Circuit has held that "detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months."  <u>Diouf v. Napolitano</u>, 634 F.3d 1081, 1092 n. 13 (9th Cir. 2011) (interpreting § 1231(a)(6)); <u>see</u> <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1139 (9th Cir. 2013) (holding that immigration detention becomes prolonged at the six-month mark "regardless of the authorizing statute," interpreting <u>Diouf</u>).  As a result, courts in this Circuit have held that a § 1226(a) detainee is entitled to a bond hearing after six months of detention.  <u>E.g.</u>, <u>Alvarado v. Clark</u>, 2014 WL 6901766, at *2 (W.D. Wash. Dec. 8, 2014).  Because plaintiff never endured prolonged (i.e., six-month) detention, defendants argue, she was never entitled to a bond hearing and was never actually harmed by receiving a defective hearing.

While the government may have had six months before it was obliged to give plaintiff a bond hearing, the Court fails to see how an alien's detention remains presumptively reasonable after the government has given her a bond hearing to determine whether she should be detained.  In finding six months to be a "presumptively reasonable" period for detaining aliens who have been ordered removed, the Supreme Court in <u>Zadvydas v. Davis</u> recognized six months as a reasonably necessary period for the Executive branch to secure an alien's removal and navigate the attendant issues that fall within executive expertise.  533 U.S. 678, 701-02 (2001)

---

any future proceeding.  The Court has found no authority indicating that an alien may only receive a bond or conditional parole where, absent a bond or conditions on her release, she would still not present a flight risk.  Bond amounts are set above the minimum in order to mitigate the flight risk that an alien poses, and this would be the same purpose served by imposing onerous "conditions" on an alien's release in lieu of a bond.  <u>See</u> <u>Prieto-Romero</u>, 534 at 1068 (IJ had imposed a $15,000 bond to ensure that alien appeared at removal); <u>see also</u> <u>In Re Guerra</u>, 24 I. & N. Dec. 37, 40 (BIA 2006) (IJs consider factors indicating an alien's likelihood of flight in considering both whether to release this alien on bond and what amount of bond to impose).  The Court cannot conclude that aliens presenting some flight risk are per se ineligible for conditional parole.

(interpreting § 1231).  The six-month rule appears to have the same significance in the § 1226(a) context.  See Prieto-Romero, 534 F.3d at 1063 (Attorney General's detention authority under 1226(a) is limited to the period reasonably necessary to affect an alien's removal) (citing Zadvydas).   In granting an alien a bond hearing during that period, the government makes the decision that the reasonableness of continuing to detain this alien while the removal process runs its course is ripe for review given the possibility of prolonged detention.  It only follows that this Court should recognize this alien's liberty interest in not being detained unnecessarily and find her entitled to a proper Casas hearing.  The Court thus finds that aliens who are detained following defective bond hearings (regardless of how long they have been detained) may immediately challenge their hearings for legal error on the grounds that their continued detention is an unnecessary harm.  Plaintiff had standing to bring this action.

### **B.** **Mootness**

Defendants argue that plaintiff's claims are moot because she is no longer in custody.  Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."  United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (internal quotation marks omitted).  A claim becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.  Haro v. Sebelius, 747 F.3d 1099, 1110 (9th Cir. 2013) (citation omitted).  However, where a plaintiff's claim becomes moot while she seeks to certify a class, her action will not be rendered moot if her claims are "inherently transitory" (such that the trial court could not have ruled on the motion for class certification before her claim expired), as similarly-situated class members would have the same complaint.  See Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1090-91 (9th Cir. 2011) (describing how this "relation back" doctrine applies in class actions).  The theory behind this rule is that such claims are "capable of repetition, yet evading review."  See id.

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

Plaintiff brought this action and sought class certification prior to her release from custody, when she had standing to seek a new bond hearing.  Dkt. # 1; Dkt. # 2.  Although plaintiff's class certification motion was ultimately noted for consideration well after plaintiff's release, the Court finds that the relation back doctrine applies.  In <u>Lyon v. United States Immigration & Customs Enforcement</u>, 300 F.R.D. 628, 639 (N.D. Cal. 2014), the court held that immigration detainees' claims were inherently transitory because "the length of [an alien's] detention cannot be ascertained at the outset" of a case "and may be ended before class certification by various circumstances."  The Court finds plaintiff's claims inherently transitory on this same basis.

Defendants argue that plaintiff's claims do not "evade review" because the administrative process entitles aliens to appeal to the BIA, and the BIA may hear these appeals even if their claims are moot for Article III purposes.  Dkt. # 31 (Def. Resp. Certif.) at 19-20; <u>In Re Luis-Rodriguez</u>, 22 I. & N. Dec. 747, 753 (BIA 1999).  The Court has only seen this concept in the context of judicial review, and defendants provide no authority suggesting that the availability of administrative review renders the relation-back doctrine inapplicable.  The authority defendants cite indicates that BIA review of mooted appeals is discretionary, and the BIA in <u>Vincente-Garcia</u> specifically sought briefing on whether it should dismiss that case for mootness; this undercuts defendants' arguments about the general availability of such review for claims such as plaintiff's.

### C.    Class Certification

Given that whether plaintiff's class should be certified relates directly to whether this action is moot, the Court next addresses the certification question.  Plaintiff seeks to certify a class consisting of the following:

> All individuals who are or will be subject to detention under 8 U.S.C. § 1226(a), and who are eligible for bond, whose custody proceedings are subject to the jurisdiction of the Seattle and Tacoma Immigration Courts.

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

Dkt. # 2-1 (Proposed Order) at 2.  Plaintiff is consistently unclear in her briefing about whether her class would include all currently-detained aliens who are still awaiting their bond hearings, or only aliens who have been or will be detained following their allegedly-defective bond hearings.  The Court assumes the former, given that courts frequently refer to "aliens detained under 8 U.S.C. § 1226(a)" when discussing aliens who are awaiting their bond hearings.  E.g., Leonardo v. Crawford, 646 F.3d 1157, 1159 (9th Cir. 2011).

The parties stipulated that no discovery was necessary in this case, which presents a "purely legal issue that will determine the merits of the litigation and likely the propriety of class certification." Dkt. # 17 at 2.  The parties dispute whether the proposed class satisfies Fed. R. Civ. P. 23(a).

### 1.  Class Definition

Defendants argue that plaintiff's "overbroad" class definition includes aliens who lack standing due to their ineligibility for conditional parole.[5]  This includes: (1) aliens with a bond set at some amount above the statutory minimum; (2) aliens denied monetary bond; and (3) aliens who have been released on bond.  For reasons the Court has already provided, the first group may be entitled to relief and thus may be part of the class.  However, the Court agrees that

---

[5] Defendants rely on Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012), for the proposition that unnamed class members must have standing.  See id. ("no class may be certified that contains members lacking Article III standing.").  As other courts have pointed out, Mazza appears inconsistent with prior Ninth Circuit precedent, namely the Ninth Circuit's en banc holding in Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements . . . .  Thus, we consider only whether at least one named plaintiff satisfies the standing requirements.").  See, e.g., Waller v. Hewlett-Packard Co., 295 F.R.D. 472, 475-79 (S.D. Cal. 2013).  Mazza also seems in conflict with post-Dukes precedent, Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011) ("[O]ur law keys on the representative party, not all of the class members, and has done so for many years."); and Ninth Circuit authority directly relating to habeas class actions brought by aliens, Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009) ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).").  Nevertheless, while district courts in this Circuit are divided on this issue, the Court finds it necessary to exclude those groups who clearly lack standing to seek relief.  See Burdick v. Union Sec. Ins. Co., 2009 WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009).  Plaintiff has not argued to the contrary.

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

aliens who have been detained without bond should not be part of the class, as it is implausible that they would receive conditional parole if the IJ would not even release them subject to a bond.  Furthermore, the Court fails to see why aliens who have been released on bond should be part of the class, given that they do not face prolonged detention.  This limits plaintiff's class to (a) aliens who are being or will be detained after having a bond imposed that they are unable to pay; and (b) aliens who have not yet had a bond hearing but risk receiving a defective one.

The latter group's standing is debatable.  Although the Court has found that being detained after a defective bond hearing can be an injury even where an alien has not yet spent six months in detention, it is impossible to know ex ante which aliens will receive a bond hearing (prior to their final release or removal) and which will be detained without bond, arguably making the danger to them conjectural.  Ninth Circuit precedent suggests that a class may include uninjured parties.  In Hayes, the court rejected the government's argument that a class of aliens demanding bond hearings had to be decertified where this class likely included aliens who were not entitled to bond hearings.  591 F.3d at 1125 ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).").  However, Hayes predated the trend in this Circuit after Mazza to scrutinize the standing of absent class members.  The Court need not resolve this issue, because the requirements for class certification have been satisfied even excising this group from the class definition and focusing solely on aliens who have been (or will be)[6] detained following their bond hearings for inability to pay.[7]

## 2.   Numerosity

In assessing whether the class is "so numerous that joinder is impracticable" for the purposes of Rule 23(a)(1), the Court notes that plaintiff has not provided any specific number for

---

[6] Hayes, 591 F.3d at 1118 ("The inclusion of future class members in a class is not in itself unusual or objectionable . . . . When the future persons referenced become members of the class, their claims will necessarily be ripe.") (internal citations omitted).

[7] The Court will ultimately not modify the class definition to remove this group; this is unnecessary, given that this group would still benefit from the requested classwide relief.

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

how many aliens fall within the narrowed class; however, this is not dispositive. In re Stec Inc. Sec. Litig., 2012 WL 6965372, at *4 (C.D. Cal. Mar. 7, 2012) ("the exact size of the class need not be known so long as general knowledge and common sense indicate that it is large.") (citation omitted). Relatively small class sizes have been found to satisfy this requirement where joinder is still found impractical. McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (certifying class of twenty-seven known plaintiffs); see also Villalpando v. Exel Direct Inc., 2014 WL 6625011, at *16 (N.D. Cal. Nov. 20, 2014) (noting that courts routinely find numerosity where class comprises 40 or more members). Factors in assessing whether impracticality justifies finding a small class sufficiently numerous include judicial economy, geographic dispersal of the class members, the ability of individual claimants to bring separate suits, and whether plaintiffs seek prospective relief affecting future class members. McCluskey, 268 F.R.D. at 673 (quoting Jordan v. Los Angeles County, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982)). Courts in this Circuit have disagreed about whether the inclusion of future class members, by itself, satisfies the numerosity requirement. Compare Nat'l Ass'n of Radiation Survivors v. Walters, 111 F.R.D. 595, 599 (N.D. Cal. 1986) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (citation and quotation marks omitted); with R.G. v. Koller, 2006 WL 897578, at *5 (D. Haw. Mar. 16, 2006) ("[A] court should only consider potential future class members if the court can make a reasonable approximation of their number.").

     Plaintiff's evidence suggests that hundreds of § 1226(a) detainees are detained in Seattle each month, Dkt. # 4 (Tan Decl.) (interpreting 2011 detainee numbers); that the Tacoma Immigration Court hears between 45-72 bond hearings per week, Dkt. # 7 (Warden-Hertz Decl.) ¶ 6; and that 1,287 aliens had a bond set in Tacoma Immigration Court between April 1, 2013 and April 1, 2014. Dkt. # 3 (Hausman Decl.); Dkt. # 3-1 (Hausman Data). Admittedly, plaintiff

has not provided a way to determine how many of the 2013-2014 detainees were able to immediately pay their bonds or were subsequently detained for inability to pay. However, the Court finds it highly plausible that more than 40 aliens will be detained on this basis over the next year, and that more than 40 aliens are being detained on this basis currently. As the Court explains further infra, plaintiff has also provided compelling evidence that IJs in this District refuse to consider conditional parole requests, a policy that could affect such aliens' bond determinations. Thus, especially given the transient nature of the class and the inclusion of future class members, the Court finds the class sufficiently numerous and joinder impractical. Plaintiff has established numerosity.

### 3.    Other Rule 23(a) Requirements

The Court finds that Rule 23(a)'s requirements of commonality, typicality and adequacy have been easily satisfied. Class members share common questions of law and fact (concerning whether they received or will receive a bond hearing that does not comply with the law). In this respect, they have "suffered the same injury," and their claims "depend upon a common contention" that is "capable of classwide resolution." Wal-Mart, 131 S. Ct. at 2551. Plaintiff's claim is typical of her class members', given that the class faces the same injury from the same policy. See Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014). Finally, the Court is convinced that plaintiff and plaintiff's experienced counsel would fairly and adequately protect the interests of this class, especially given the fact that plaintiff's interests in this action are in line with those of the other class members.

### 4.    Rule 23(b)(2) Requirements

Fed. R. Civ. P. 23(b)(2) permits certification of a class seeking declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This action concerns a single policy applicable to the entire class that (if unlawful) subjects class members to unnecessary detention. The Rule's

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

requirements are satisfied.  See Parsons, 754 F.3d at 689 (Rule 23(b)(2) satisfied where state

department of corrections established policies and practices that placed "every inmate in custody

in peril" and all class members sought essentially the same injunctive relief).

The following class will be certified:

> All individuals who are or will be subject to detention under 8 U.S.C.
> § 1226(a), and who are eligible for bond, whose custody proceedings are subject to
> the jurisdiction of the Seattle and Tacoma Immigration Courts; excluding those
> who (a) are being detained without bond following a bond determination and
> (b) those who have been released from custody.

### D.    Exhaustion

Defendants note that plaintiff failed to exhaust her administrative remedies because she

filed this lawsuit before the BIA rendered its decision in her bond appeal, and argue that this

necessitates staying or dismissing her case.  Dkt. # 35 at 10-11.  The Court disagrees.

On habeas review, exhaustion is a prudential rather than jurisdictional requirement.

Singh, 638 F.3d at 1203 n. 3.[8]  Courts may require prudential exhaustion if (1) agency expertise

makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative

scheme; or (3) administrative review is likely to allow the agency to correct its own mistakes and

to preclude the need for judicial review.  Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

Even if these factors weigh in favor of prudential exhaustion, waiver of exhaustion may be

appropriate "where administrative remedies are inadequate or not efficacious, pursuit of

administrative remedies would be a futile gesture, irreparable injury will result, or the

administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir.

2004) (citation and quotation marks omitted).  When a petitioner fails to exhaust prudentially

required administrative remedies and exhaustion is not excused, "a district court should either

---

[8] Leonardo v. Crawford, 646 F.3d 1157, 1159 (9th Cir. 2011), cited by defendants, also suggests that
exhaustion is prudential in this case.  See id. (affirming dismissal of habeas petition challenging bond
determination for failure to exhaust administrative remedies, but holding that the Court had jurisdiction
over this claim); see also Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004).

1  dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted

2  remedies[.]"  Leonardo, 646 F.3d at 1160.

3       The Court waives the exhaustion requirement in this case.  First, a record of

4  administrative appeal is not necessary to resolve the purely legal question presented.  See Singh,

5  638 F.3d at 1203 n. 3.  Second, the discreteness of the legal question presented and plaintiff's

6  request for classwide relief suggest that relaxing the exhaustion requirement in this case will not

7  encourage future habeas petitioners to bypass the administrative scheme, as the issue here will

8  not arise again (at least in this District) once the Court rules on it.  See id.; El Rescate Legal

9  Servs., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 747 (9th Cir. 1991)

10 ("[R]elaxing the exhaustion requirement would not significantly encourage bypassing the

11 administrative process because the district court will have jurisdiction only in the rare case

12 alleging a pattern or practice violating the rights of a class of applicants.") (citation and

13 quotation marks omitted).

14      Third, the Court is sufficiently convinced that pursuing administrative review further

15 would have been futile.  Recourse to administrative remedies is considered "futile" where the

16 agency's position on the question at issue "appears already set," and the Court can predict the

17 "very likely" outcome.  El Rescate, 959 F.2d at 747.  Other courts have found unpublished BIA

18 holdings highly probative of whether the Board has come to a decision on an issue.  See Sulayao

19 v. Shanahan, 2009 WL 3003188, at *3 (S.D.N.Y. Sept. 15, 2009); Cox v. Monica, 2007 WL

20 1804335, at *2 (M.D. Pa. June 20, 2007).  The BIA has twice clearly indicated that IJs may not

21 grant conditional parole, reversing IJ rulings to this effect.  See In re Gregg, 2004 WL 2374493,

22 at *1 (BIA Aug. 3, 2004); In re Suero-Santana, 2007 WL 1153879, at *1 (BIA Mar. 26, 2007).

23 Plaintiff has presented compelling evidence  – including the EOIR's Immigration Judge

24 Benchbook – that as a matter of policy, IJs will not consider conditional parole.[9]  Dkt. # 1 (Exh.

25

26 [9] On the basis of the record before it, the Court finds sufficient evidence to support plaintiff's claim that
   IJs in Seattle and Tacoma refuse to consider granting conditional parole in § 1226(a) bond hearings.

27
   ORDER GRANTING MOTION TO CERTIFY CLASS

28 AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

B) (Benchbook Oct. 2001); Dkt. # 3 (Hausman Decl.) ¶¶ 12-13 (no aliens were granted conditional parole by the Seattle and Tacoma Immigration Courts between April 1, 2013 and April 1, 2014); Dkt. # 7 (Warden-Hertz Decl.) ¶ 7 (primary legal service provider for Tacoma detainees unaware of any detainee's release on conditional parole). The agency has adopted a clear position on this issue. See Gonzales v. Dep't of Homeland Sec., 508 F.3d 1227, 1234 (9th Cir. 2007) (exhaustion not required where "[T]he agency has spoken clearly through the policy statement contained in the Interoffice Memorandum and its application of this policy in a number of cases.").

The fact that the BIA in Vincente-Garcia specifically requested briefing on the central issue in this case suggests the possibility that it will reconsider the issue (assuming that it does not dismiss the case as moot, the other issue on which it requested briefing). However, this alone cannot outweigh the fact that the agency has to date made its position very clear, leaving the Court to conclude that the likely outcome of plaintiff's BIA appeal would be a denial consistent with agency policy. The Court waives prudential exhaustion.

### E.   Prudential Ripeness

Defendants argue that this Court should decline to exercise jurisdiction on prudential ripeness grounds. Dkt. # 28-1 at 18-22. Prudential ripeness inquiry turns on (a) the fitness of the issues for judicial review and (b) the hardship to the parties of withholding court consideration. Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007) (citation and quotation marks omitted). This case presents a purely legal question of statutory interpretation on which the agency has made its position clear, and no further factual development is necessary. For reasons already provided, the Court finds a definite and concrete dispute. This action is fit for review. Because the first factor in prudential ripeness inquiry is satisfied, it is not necessary to consider the hardship to the plaintiff class by delaying review (although the Court notes that delay would further expose class members to the risk of

1  unnecessary prolonged detention).  See Oklevueha Native Am. Church of Hawaii, Inc. v.

2  Holder, 676 F.3d 829, 838 (9th Cir. 2012).  Defendants' prudential ripeness argument is rejected.

3  **F.    Whether to Stay Action or Grant Requested Relief**

4       Defendants argue that because Vicente-Garcia is before the BIA, and the BIA may

5  issue a precedential finding on the conditional parole issue to which the Court would have

6  to give Chevron deference, this action should be stayed.[10]  Dkt. # 18 at 3.  This Court

7  must defer to the BIA's interpretations of ambiguous provisions of the INA in its

8  precedential adjudications so long as these interpretations are reasonable.  See Mendoza

9  v. Holder, 623 F.3d 1299, 1303 (9th Cir. 2010) (citing Chevron U.S.A., Inc. v. Nat. Res.

10  Def. Council, Inc., 467 U.S. 837, 843 (1984)); see also INS v. Aguirre-Aguirre, 526 U.S.

11  415, 425 (1999).  Plaintiff counters that this Court need not stay this case or defer to the

12  BIA's decision because § 1226(a) is unambiguous, which precludes Chevron deference.

13  Dkt. # 29 (Pl. Resp. Stay) at 3.  Plaintiff further argues that it is speculative whether the

14  BIA will hear Vicente-Garcia, rule on the issue in this case or issue a precedential

15  opinion.  Plaintiff contends that staying her case would simply force class members to

16  endure unnecessary detention.[11]  Dkt. # 33 at 18-19.

17       The Court sees no reason to stay the instant case, because it finds § 1226(a)

18  unambiguous.  While defendants emphasize that the statute, regulations and precedent fail

19  to define "conditional parole," § 1226(a) clearly presents it as an alternative to releasing

20  ─────────────
[10] At oral argument, counsel for defendants asked the Court to delay ruling on this motion for 60 days in

21  order to give the BIA an opportunity to rule on Vicente-Garcia.  That request is also denied.
[11] In support of their motion to stay, defendants cite cases applying the "ordinary remand rule"

22  articulated in INS v. Orlando Ventura, 537 U.S. 12, 16-17 (2002), which provides that, in reviewing the
   decision of an administrative agency, a court must remand the matter back to the agency where the

23  agency has not yet considered the issue presented, except in "rare circumstances."  In Neguise v. Holder,
   555 U.S. 511, 517, 523-24 (2009), the Court remanded a case where the BIA had not yet interpreted an

24  ambiguous provision of the INA.  Defendants emphasize that the BIA has never squarely addressed the
   question presented in this case.  Plaintiff argues that the agency has already made its position clear,

25  emphasizing that the ordinary remand rule does not require remand where the agency has already
   considered the issue, see, e.g. Almaghzar v. Gonzales, 457 F.3d 915, 923 n. 11 (9th Cir. 2006).  As the

26  Court finds the statute unambiguous, defendants' reliance on Neguise is unpersuasive.

27

28  ORDER GRANTING MOTION TO CERTIFY CLASS
   AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19

an alien subject to a bond.  Defendants have not articulated a coherent alternative reading

of the statute.  In its brief in <u>Vicente-Garcia</u>, ICE adopted this very interpretation:

> A reading of the plain language of INA § 236(a)(2)(A) and (B) together clearly shows that an Immigration Judge can release an alien without bond or with bond. If releasing an alien with the imposition of a monetary bond, the Immigration Judge must set the monetary bond at a minimum of $1,500 under the plain language of INA § 236(a).

Dkt. # 38-1 (Gov. Supp. Br. <u>Vincente-Garcia</u>) at 13.  As the BIA noted in <u>Navarro-Solajo</u>, 2011

WL 1792597, at *1 n. 2, release without bond could be subject to other conditions aimed at

ensuring the alien's presence at the hearing.  § 1226(a) unambiguously states that an IJ may

consider conditions for release beyond a monetary bond.  Plaintiff's IJ mistakenly believed he

had no such authority, a misunderstanding that conflicted with the law.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court DENIES defendants' motion to stay, Dkt. # 18;

DENIES defendants' motion for summary judgment, Dkt. # 28-1; GRANTS plaintiff's motion to

certify a Rule 23(b)(2) class, Dkt. # 2; and GRANTS plaintiff's motion for summary judgment,

Dkt. # 25.

Plaintiff is entitled to declaratory and injunctive relief.  The Court finds that § 1226(a)

permits IJs to consider conditions for release beyond a monetary bond.  Immigration Judges in

Seattle and Tacoma presiding over bond hearings conducted pursuant to 8 U.S.C. § 1226(a) must

henceforth consider whether to grant conditional parole in lieu of imposing a monetary bond.

The Court will not yet enforce this Order with respect to aliens who have been detained

following their bond hearings.  The Court is not aware of the logistical steps necessary to carry

out the necessary reviews and rehearings for these aliens, and therefore requests additional

information from the parties.  By May 22, 2015, defendants shall file under seal (with a copy

served on class counsel) a list containing the name and alien number (or other identifying

number) of all aliens currently being detained after having bonds imposed by Seattle and

Tacoma Immigration Judges in § 1226(a) bond hearings.  This list should indicate the amounts

ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 20

of these detainees' bonds, the dates of their previous bond hearings, the dates of any scheduled future bond hearings, and information concerning whether these aliens are currently  represented by counsel.   The Court understands that detainee populations will inevitably fluctuate while this data is being collected.  Aliens who have been detained without bond or have been released subject to a bond are not eligible for new bond hearings under this Order, and thus the Court does not need additional data concerning these aliens.

By June 5, 2015, the parties shall submit briefs to the Court (not to exceed twelve pages) proposing how bond rehearings may be scheduled and carried-out, and providing reasonable estimates as to how long it will take to schedule and complete rehearings for all class members. These proposals will be noted for consideration on June 19, 2015.  Opposition briefs challenging the other party's proposal (not to exceed twelve pages) will be due Monday, June 15, 2015; and replies (not to exceed six pages) will be due Friday, June 19, 2015.  It appears sensible to prioritize scheduling rehearings for those aliens who (a) have been given the minimum bond and (b) have been in detention the longest.  The Court understands that some detainees in the class will not receive immediate relief under this Order; however, the Court must consider the impact of this Order on both the class members and on the United States, and must implement the Order in a pragmatic fashion that is fair to both parties.


DATED this 13th day of April, 2015.


Robert S. Lasnik
United States District Judge


ORDER GRANTING MOTION TO CERTIFY CLASS
AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 21